**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

LARA GONZALEZ,

     Plaintiff,

       v.

HURLEY INTERNATIONAL LLC.,

     Defendant.

**Civil No. 10-1919 (SEC)**

**OPINION AND ORDER**

     Before the Court are the defendant's motion for summary judgment (Docket # 91), the plaintiff's opposition thereto (Docket # 102), and the defendant's reply (Docket # 109). After reviewing the filings and the applicable law, the defendant's motion is **GRANTED in part and DENIED in part.**

     **Factual and Procedural Background**

     In this diversity suit, Lara González sues Hurley International LLC. ("Hurley" or the "Company"), alleging that Hurley terminated her in contravention of Puerto Rico's Sales Representative Act, commonly known as Law 21, P.R. Laws Ann. tit. 10, § 279. The material, uncontested facts, follow.

     González currently is (and has been) an independent sales representative who works with surfing wear companies, while Hurley is a company that manufactures clothing, wetsuits, shoes, accessories and related products throughout the United States and the Caribbean via a network of distributors and independent sales representatives.  Docket # 96-1 ("SUF"), ¶ 1. Hurley sells

its products in the territory of Puerto Rico and the Caribbean (the "Territory") through several

channels of distribution, including in-house national accounts, licensee agreements with third

parties, and independent sales representatives. Docket # 91-4, p. 1, ¶ 3. Hurley's in-house

national accounts are those maintained with certain retail chains and are sold directly without

the intervention of a sales representative. Such accounts include general department stores and

specialty stores, such as Macy's, Marshall's, and Costco. Id. ¶ 4.[1]

In 2004, González began her business relationship with Hurley, being appointed as

Hurley's independent sales representative for its women's line. Docket # 103 ("ASUF"), ¶ 7.

Hurley had no line for women's wear at that time, so it had been looking for sales representatives

in its territories to help in the development of a brand new line for women's wear. Docket # 103-

2, p. 27:1-19. González was the only representative that managed the women's line in the

Territory. Id., p. 23:1-6. Although in the very beginning, the parties' relationship appeared to

have been embodied in a verbal agreement, id., p. 22:18-25, at some point before 2007, González

signed several agreements with Hurley. Id., p. 28:22-25.[2]

After González started selling the women's line, Hurley decided to transfer the men's

line—which had been hitherto managed by another sales representative— to her. Id., p. 37:5-10.

---

[1] The term "territory" means the geographical areas in which Hurley's sales representatives operated. González's "territory" was defined as Puerto Rico and the Caribbean. Docket # 103-2, p. 46: 3-6. The in-house national accounts were not part of Gonzalez's defined territory, however. See Docket # 103-2, p. 78:13-18. In turn, Gonzalez's defined market within the Territory consisted in several "specialty" non-house accounts, such as local surfing wear stores. Id., p. 82:1-12.

[2] Neither of the parties could produce copies of such agreements, however.

CIVIL NO. 10-1919 (SEC)                                                                 **Page 3**

According to González's deposition, because of her "good performance," id., p. 37:12-14, Hurley decided that she was the "best person to represent both lines." Id. In fact, it was Bob Hurley, the Company's founder, who "congratulated" her for becoming the representative for both lines. Id., p. 38:7-8. Bob Hurley, González testified under oath, also told her that, as long as she did a "great job," id., p. 38:17-25, she would be "the only person selling those lines." Id. Bob Hurley also mentioned to her that she would be "exclusive" in selling those lines, and that nobody else could sell them in Puerto Rico.  Id., p. 39:1-3.

As soon as she was awarded the men's line, González (without Hurley's financial assistance) "built" a showroom to "impress" her clients. Id., p. 40:1-17. She also hired a staff to aid her in the sales of Hurley products. Id., p. 41:4-25. During the entire period of the parties' relationship, the Company neither appointed another sales representative nor sold directly to her accounts. ASUF ¶ 26. González was also required by Hurley to exclusively represent its products in the Territory, to the exclusion of other competing brands. Id. ¶ 40.

The financial arrangements between the parties consisted in González receiving a six percent commission on her net sales. Id., p. 43:5-22. In 2007, Hurley increased her commission to eight percent. Id., p. 48:6-16. Such an increase was embodied in a signed document, the 2007 Sales Representative Agreement between Hurley and González (the "Agreement"). Docket # 91-3, Exh. 1, pp. 1-14. The Agreement, which regulated the parties' relationship from August 1, 2007 until July 31, 2008, provided in pertinent part:

> [The] Company hereby appoints Representative [González] as Company's nonexclusive independent sales representative to promote and disseminate

information and solicit orders from approved accounts in . . . [the Territory] for the products identified in Exhibit "B" . . . . Representative hereby accepts such <u>non-exclusive appointment</u> . . . . Company shall have the right, in its sole discretion on thirty (30) days written notice, to appoint other sales representatives or to make accounts within the Territory house accounts for which Representative shall not be identified not be entitled to a Commission . . . <u>Id.</u>, p. 1 (emphasis added).                                 * * *

Representative is an independent contractor. . . . Company is only interested in the results obtained by the Representative who shall have the sole control of the manner and means of performing under this Agreement. Nothing contained in this Agreement shall be construed to give the Company the right to direct or control the day-to-day activities of Representative. Company shall not have the right to require Representative to conform to any fixed or minimum number of hours, follow prescribed itineraries, or do anything that would jeopardize the independent contractor status of Representative. <u>Id.</u>, p. 6.

The Agreement was in turn  extended until July 31, 2009, when it expired by its own terms. Docket # 91-5, Exh. 2, pp. 16-19. There were no further written agreements.  Docket # 103-3, p. 109:5-22. The parties relationship, however, "continued the same way," until it concluded on December 1, 2009.  Docket # 103-3, p. 115:13-18. That day, González testified in her deposition, John Heelan, Hurley's Eastern Regional Sales Manager (and González's sales manager), called her to say that, "due to the lack of communication," the Company was "letting her go." <u>Id.</u>, p. 116:11-25. González later testified, however, that she "was let go because of performance." <u>Id.</u>, p. 174:4-5.

Unhappy with her termination, González filed this suit on September 23, 2010, alleging that Hurley had violated Law 21 when it terminated her without "just cause." Docket # 1. Under the Agreement's mandatory arbitration clause, Hurley moved to compel arbitration (Docket #

6), which González opposed (Docket # 10). Because the Agreement had expired in July 2009, the Court reasoned, Hurley had failed "to meet one of the essential elements that compel arbitration, to wit, the existence of a valid agreement to arbitrate." González v. Hurley Int'l, Inc., 763 F. Supp. 2d 288, 294 (D.P.R. 2011). The Court thus denied the Company's motion to compel arbitration on February 9, 2011.

Hurley then moved to dismiss, assailing the sufficiency of González's factual allegations. In opposing Hurley's motion, González requested leave to amend the complaint in order to cure any factual deficiencies, which the Court granted. González v. Hurley Intern., Inc., No. 10-1919, 2011 WL 1404916, at *2 (D.P.R. Apr. 12, 2011). Then, González filed an amended complaint on April 12, 2011, which stated in pertinent part that "[a]fter July 31, 2009, Lara became Hurley's exclusive sales representative for the Products in Puerto Rico." Docket # 52, ¶ 5. According to the amended complaint, prior to that date, she had been "Hurley's sole sales representative . . . ." Id. Hurley renewed its motion to dismiss, which the court denied. González v. Hurley Intern., Inc., No. 10-1919, 2011 WL 4856454, at *4 (D.P.R. Oct. 13, 2011). Nevertheless, the Court "reiterate[d] its previous finding that, before the expiration of the Agreement, [González] was a non-exclusive sales representative." Id. at *3 n. 2.

After a heated discovery and other procedural nuances, González sought leave to file a second amended complaint. But the Court denied the motion, holding, inter alia, that "the plaintiff ha[d] been far from diligent in moving to amend, . . . . failing to show good cause . . .

." González v. Hurley Intern., Inc., No. 10-1919, 2012 WL 1577572, at *3 (D.P.R. May. 4, 2012).

Finally, Hurley filed the instant motion for summary judgment, alleging that González has failed to satisfy the exclusivity requirement of Law 21. In the alternative, Hurley posits that it had good cause for terminating González. González timely opposed, maintaining that genuine issues of material fact preclude such determinations.

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Avery v. Hughes, 661 F.3d 690, 693 (1st Cir. 2011).  In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994).  At this stage, the court construes the record in the "light most flattering" to the nonmovant, resolving all reasonable inferences in that party's favor. Soto-Padro v. Public Bldgs. Authority, 675 F.3d 1 (1st Cir. 2012).

The summary judgment inquiry is grounded in the factual evidence available, since "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Once the movant has averred that there is an absence of evidence to support the nonmoving party's

case, the burden shifts to the nonmovant to establish the existence of at least one fact at issue that

is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)

(citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of

either party and, therefore, requires the finder of fact to make 'a choice between the parties'

differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 117 (1st Cir.

2005) (quoting Garside, 895 F.2d at 48). A material fact, in turn, is one that may affect the

outcome of the suit under the governing law. Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746,

748 (1st Cir. 1994).

        At any rate, to defeat summary judgment, the opposing party may not rest on conclusory

allegations, improbable inferences, and unsupported speculation. Hadfield v. McDonough, 407

F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8

(1st Cir. 1990)).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a

genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997).

Accordingly, once the party moving for summary judgment has established an absence of

material facts in dispute, and that judgment is proper as a matter of law, the "party opposing

summary judgment must present definite, competent evidence to rebut the motion." Mendez-

Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting Maldonado-Denis v. Castillo-

Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994)). "The non-movant must 'produce specific facts, in

suitable evidentiary form' sufficient to limn a trial-worthy issue . . . . Failure to do so allows the

summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924

F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary

judgment proponent to configure the record is likely to prove fraught with consequence"); Mack

v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence

illustrating the factual controversy cannot be conjectural or problematic; it must have substance

in the sense that it limns differing versions of the truth which a fact finder must resolve").

**Applicable Law and Analysis**

*Whether González is an "exclusive sales representative" under Law 21*

Seeking to eradicate the growing number of cases in which, without taking into account

their legitimate interests, domestic and foreign enterprises eliminate their sales representatives

as soon as these have created a favorable market, the Puerto Rico legislature enacted Law 21.

Cruz-Marcano v. Sánchez-Tarazona, 172 P.R. Dec. 526, 543 (2007) (certified translation

provided by parties at Docket #103-1) (citing legislative history); see also Re-Ace, Inc. v.

Wheeled Coach Indus., Inc., 363 F.3d 51, 57 (1st Cir. 2004).[3]  Therefore, "Law 21 . . . reflects

. . . [this] "strong public policy of [Puerto Rico]." Its provisions pertain to 'public order' and

_____

[3]In enacting Law 21, the Puerto Rico legislature sought to place the sale representatives, "[w]ho did not enjoy any protection in the event of cancellation of their contract without just cause," id., on equal footing with the dealers or distributors, who had been long protected by the Puerto Rico's Dealers' Contract Act of 1964 ("Law 75"), P.R. Laws Ann. tit. 10, §§ 278-278e. It is therefore no surprise that Law 21 tracks Law 75 very closely, see Rafael Rodríguez Barril v. Conbraco Indus., Inc., 619 F.3d 90, 93-94 (1st Cir. 2010), "[a]nd it is well settled that applicable jurisprudence to Law 75 is also of application in controversies as per Law 21." Innovation Mktg. v. Tuffcare Inc., 31 F. Supp. 2d 218, 220 (D.P.R. 1998); Beatty Caribbean, Inc. v. Nova Chemicals, Inc., No. 08-2259, 2009 WL 2151303, at *12 (D.P.R. Jul. 16, 2009).

'shall be liberally construed.'" <u>Rafael Rodríguez Barril, Inc.</u>, 619 F.3d at 93-94 (quoting P.R. Laws Ann. tit. 10, § 279g).

Accordingly, the principal or grantor, "a person who grants a sales representation contract to a sales representative," P.R. Laws Ann. tit. 10, § 279(b), can neither terminate its exclusive sales representative (or refuse to renew its contract) nor "[p]erform any act that may impair the established relationship . . . , except for just cause." <u>Id.</u> § 279a. If the principal terminates its commercial relationship with its exclusive sales representative without just cause, it is liable for the damages caused. <u>Id.</u> § 279c. The statute, in turn, defines a sales representation contract as

> [an] agreement established between a sales representative and a principal, through which, and regardless of the way in which the parties establish, delineate or formalize said agreement, the party of the first part commits himself to making a reasonable effort and due diligence in the creation or expansion of a market which is favorable for the products that the principal sells, directed at capturing clientele to offer it a product or service marketed by him in Puerto Rico, and the party of the second part is bound to comply with the commitments that may result from the sales representative's efforts and coordination and to pay the previously-accorded commission or remuneration. <u>Id.</u> §279(c).

Law 21 defines a sales representative as "[a]n independent entrepreneur who establishes a sales representation contract of an <u>exclusive nature</u>, with a principal or grantor, and who is assigned a specific territory or market, within the Commonwealth of Puerto Rico. . . ." <u>Id.</u> § 279(a) (emphasis added). The Puerto Rico Supreme Court has expounded on the matter, explaining that a sales representative is a "business intermediary who: (1) exclusively promotes and processes contracts on behalf of a principal in an ongoing, stable manner; (2) operates in a defined territory or market; (3) is responsible for creating or expanding the market for the

principal's products through promotional efforts; (4) receives commissions for his services or

a pay previously agreed upon by the parties; and (5) operates as an independent merchant." IOM

Corp. v. Brown Forman Corp., 627 F.3d 440, 446 (1st Cir. 2010) (citing Cruz-Marcano, 172 P.R.

Dec. at 548-49 (footnote omitted)).

*Exclusivity*

Contrary to Law 75, which does not require exclusivity for an actionable claim brought

by a non-exclusive dealer, e.g., Vulcan Tools of Puerto Rico v. Makita U.S.A., Inc., 23 F.3d 564,

569 (1st Cir.1994) ("It is beyond cavil that non-exclusive distributors are entitled to protection

under Law 75.") (citation omitted), Law 21 does impose such a requirement.  And while Law

21 is silent as to what constitutes exclusivity, see Orba, Inc. v. MBR Indus., Inc., 49 F. Supp. 2d

67, 71 (D.P.R. 1999), courts in this circuit have long held that exclusivity "is generally apparent

either from the contract or from the arrangements agreed upon between the parties." IOM Corp.,

627 F.3d at 448 (citation and internal quotation marks omitted). In 2007, the Supreme Court of

Puerto Rico finally provided some much-needed guidance on this point. The court explained:

> [T]he term exclusive . . . [is] a privilege or right by virtue of which a person or
> corporation can do something prohibited from the rest. Furthermore, an exclusive
> agency is characterized by the fact that the agent may keep the represented
> businessman from conducting operations in the zone reserved to the former,
> whether this involved operations conducted personally by the businessman, or
> operations carried out through his assistants or other agents. Therefore,
> hypothetically in a sales representative agreement protected by . . . [Law 21], the
> principal cannot on his own or through a third party perform the same jobs as he
> has conferred on the agent; that is, he would not be able to operate in the agent's
> territory or market. Cruz-Marcano, 172 P.R. Dec. at 548 (citations, internal
> quotation marks omitted and brackets omitted; emphasis added).

**CIVIL NO. 10-1919 (SEC)**                                                              **Page 11**

Following <u>Cruz-Marcano</u>, the First Circuit has said that "[t]he exclusivity requirement is met where neither the principal merchant nor third parties are allowed to sell the product in the same territory or market in which the sales representative operates." <u>IOM Corp.</u>, 627 F.3d at 448 (citation omitted).

As previously indicated, González alleges that summary judgment is improper because there are genuine issues of material fact regarding "whether or not plaintiff was ever Hurley's exclusive sales representative during her six long years of exclusive service . . . ." Docket # 102, p. 21. For the reasons set forth below, this controversy is partially unamenable to disposition via summary judgment.

A.      *The Sales Representative Relationship Under the Agreement*

The Court twice has held that, as a matter of law, González was a non-exclusive sales representative during the period in which the Agreement was in effect. <u>González</u>, 763 F.Supp.2d at 293-94 ("Under the Agreement, . . . [González] was a non-exclusive sales representative for Hurley."); <u>González</u>, 2011 WL 4856454, at *3 n. 2 (reiterating "previous finding that, before the expiration of the Agreement, . . . [González] was a non-exclusive sales representative."). That is to say, González was not protected by Law 21 from August 1, 2007 until July 31, 2009. This determination is hereby reiterated. The terms of the Agreement are "clear and leave no doubt as to the intentions of the contracting parties," P.R. Laws Ann. tit. 31, § 3471, providing that González was recruited by Hurley as a non-exclusive sales representative. See <u>Vulcan Tools of Puerto Rico</u>, 23 F.3d at 568 (finding where contractual term providing for "non-exclusive"

distributorship was clear and unambiguous, there was no need to consider extrinsic evidence of promise to limit number of distributors); <u>Alina & A Tours, Inc. v. Royal Caribbean Cruises, Ltd.,</u> No. 06-1009, 2006 WL 897975, at *10 (D.P.R. Mar. 31, 2006) ("Being a 'non-exclusive' sales representation contract, A & A cannot prevail on its claim under Law 21 because by disposition a sales representative must be an 'exclusive' representative."). <u>Accord</u> <u>Harley-Davidson Motor Co. v. Motor Sport, Inc.,</u> 6 F. Supp. 2d 996, 1001 (E.D. Wis. 1998).

In an attempt to parry this reality, González contends that she was, in fact, exclusive since she was the sole representative in the Territory. She also maintains her exclusivity stems from provision in the Agreement giving Hurley the right to appoint another sales representative in the Territory upon giving González a 30-day written notice. This contractual clause, González says, creates an ambiguity. This argument lacks force.

González relies heavily on <u>Yordan v. Burleigh Point, Ltd.,</u> in which the court determined that, although a written agreement indicated that a sales representative was appointed "on a nonexclusive basis," such a   terminology was inconsistent with another provision in the agreement which "seem[ed] to preclude the appointment of any other sales representative . . . absent a termination notice . . . ." 552 F. Supp. 2d 200, 204 (D.P.R. 2007). The court reasoned that the inconsistency between these two contractual provisions was "sufficient" to deny the defendant's motion to dismiss. <u>Id.</u>

But González's single-minded reliance on that non-binding case is mislaid. There is a fundamental distinction between <u>Yordan</u>'s "notice of termination" and the Agreement's  30-day

written notice. As correctly observed by Hurley, the notice of termination presupposes the impossibility of having more than one sales representative at a given time in a defined territory, because the new appointment would need to be preceded by the termination of the current sales representative. The 30-day written notice at play here, however, does not require that the current sales representative be terminated before it can appoint a fellow sales representative. Put another way, unlike Yordan, Hurley could appoint another sales representative without González having any right to preclude such an appointment. The 30-day written notice, therefore, does not create an ambiguity.

Moreover, Yordan was decided under the plaintiff-friendly motion to dismiss standard. Here, however, González has to come forward with a supporting showing in order to create a genuine issue of material fact. See Ahern v. Shinseki, 629 F.3d 49, 54 (1st Cir. 2010) (reiterating that the nonmovant must produce "specific facts sufficient to deflect the swing of the summary judgment scythe") (internal quotation marks omitted). She has failed to shoulder her burden. The Court agrees with Hurley that González's sole reliance on her own self-serving testimony is not enough to create an issue of material fact for the period covered by the Agreement.

The Agreement is clear, for it can "be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." P.R. Tel. Co. v. Advanced Cellular Sys. (In re Advanced Cellular Sys.), 483 F.3d 7, 12 (1st Cir. 2007) (citation and internal quotation marks omitted), cert. denied, 552 U.S. 991. And because the terms of the Agreement are clear, extrinsic evidence is inadmissible to vary the terms of an such an unambiguous

**CIVIL NO. 10-1919 (SEC)**                                                                  **Page 14**

contract. <u>IOM Corp.</u>, 627 F.3d at  453 n. 8 (citations omitted); <u>see also</u> <u>Caribbean Ins. Services</u>

<u>v. American Bankers Life Assur. Co. of Florida</u>, 754 F.2d 2 n. 6 (1st Cir. 1985) ("We do not

think that the principles of Puerto Rico contract law allow a party to defeat a motion for

summary judgment by the mere invocation of 'the parties' intention' to introduce an

interpretation of the contract totally inconsistent with its clear terms.") (citations omitted).

González's "interpretation" of the Agreement is thus inadmissible.

There is, however, an added wrinkle in this case. González appears to submit that this

court should obviate the Agreement's plain and unequivocal language labeling her as a non-

exclusive and  should look instead at the parties' arrangements evincing exclusivity. Citing no

case law on this front, she relies solely on the "waiver of rights" section contained in Law 21,

which provides as follows:

> The provisions of this chapter are of public order and therefore, the rights that
> such provisions determine can not be waived. Due to its redressing nature, this
> chapter shall be liberally construed for the most effective protection of said rights;
> in the adjudication of claims that may arise under it, the courts of justice shall
> acknowledge said rights in favor of whom is effectively in charge of the activities
> of sales representative, notwithstanding the corporate or contractual structures or
> mechanisms that the principal or grantor may have created or imposed to conceal
> the true nature of the established relationship. P.R. Laws Ann. tit. 10, § 279(g).

 Interpreting the analogous section contained in Law 75, <u>see</u>  P.R. Laws Ann. tit. 10, § 278c,

another court in this district has interpreted it "to mean that courts should carefully scrutinize the

relationship between a principal and its alleged distributor to ensure that the principal does not

purposely conceal aspects of the business relationship so as to avoid liability under Law 75."

Advance Exp., Inc. v. Medline Indus., No. 06-1527, 2007 WL 853745, at *2 (D.P.R. Mar. 19, 2007).

While González's argument has a superficial appeal, the foundation on which it is built ultimately undercuts it. Indeed, her argument hinges on the already rejected notion that there is an ambiguity in the contract, and thus that the "[the Agreement] was intended by the principal (Hurley) to conceal the true nature of an otherwise exclusive relationship." Docket # 102, p. 15 (emphasis in original). But the Court already determined that the Agreement is unambiguous.

Even assuming, arguendo, that such an ambiguity existed, it cannot be said that the Company concealed the "true nature" of its relationship with González. The Company marshaled evidence, see Dockets # 91-7 ¶ 9 & 91-4 ¶6, showing that all of its sales representatives were hired on an non-exclusive basis, and that identical agreements were signed to that effect. See Innovation Mktg., 31 F. Supp. 2d at 222 ("The agreement signed by Innovation is the standard sales representative agreement that Tuffcare executes in all 50 states of the United States, which this court interprets as a non-exclusive contract."). And the Agreement, which González signed, explicitly labeled her as an non-exclusive sales representative. Far from concealing any aspects, the Company candidly disclosed to González that her appointment would be non-exclusive. She cannot now use Law 21's liberal undertone as a sword with which to cut down what she voluntarily agreed to in the first place. See id. (holding that because the sales agreement between principal and sales representative "does not sound exclusive in nature . . . , the remedial provisions of Law 21 may not operate to convert non-exclusive contracts into exclusive

contracts.") (emphasis added); see also Nike Int'l, Ltd. v. Athletic Sales, Inc., 689 F. Supp. 1235, 1238 (D.P.R. 1988) ("The legislature [of Puerto Rico] did not intend that Law 75 be a safe haven for dealers to avoid the express terms of the contracts to which they willingly subscribe."); Casco Sales Co., Inc. v. Maruyama U.S., Inc., No. 10-1145, 2012 WL 5378207, at *9 (D.P.R. Nov. 2, 2012) (to be published in F. Supp. 2d) ("Pacta sunt servanda, as the saying goes contracts are to be obeyed.") (citation and internal quotation marks omitted).

Pursuant to Fed. R. Civ. P. 56(g), see Latin American Music Co. Inc. v. Media Power Group, Inc., No. 11-2108, 2013 WL 150311, at * 3 (1st Cir. Jan. 15, 2013) (to be published in F. 3d), the Court deems as an established fact that from August 1, 2007 until July 31, 2009 González was a non-exclusive sales representative and, therefore, fell outside the purview of Law 21. González's claims stemming from August 1, 2007 until July 31, 2009 are thus **DISMISSED with prejudice**. Partial Judgment will be entered accordingly.

B.      *The Sales Representative Relationship Prior to August 1, 2007*

As previously noted, González alleges that her exclusivity during this time is based on a conversation with Bob Hurley in 2004 or 2005, where he told her she was the exclusive sales representative for the Territory. Conveniently, no one else was present during the alleged conversation, and she could not even remember the place and time in which it took place. Viewing this in the light most favorable to González, however, the Court assumes without deciding that González was in fact an exclusive sales representative until she voluntarily signed the Agreement that unequivocally labeled her as a non-exclusive sales representative.  It is

further assumed, arguendo, that González's relationship with Hurley during this time frame fell under the aegis of Law 21.

But any possible Law 21 claim stemming from that period of time is time barred, as correctly alleged by Hurley. See P.R. Laws Ann. tit. 10, § 279h ("Every action derived from this chapter shall be prescribed three (3) years from the definitive date termination of the sales representation contract or of the impairing acts, as the case may be.") (emphasis added). Tellingly, González's opposition makes absolutely no effort to rebut this contention. "The perilous path," Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citation and internal quotation marks omitted) of failing to oppose is, as elucidated below, a testament to the merits of Hurley's defense. The Court dispatches this matter quickly.

The Agreement signed by González on September 16, 2007, see Docket # 91-3, p. 11, labeled her as a non-exclusive sales representative, and hence had the logical effect of abridging any pre-exclusivity she might have had prior to that date. The Agreement thus constituted the "performing of [a] detrimental act[ ]" under . . . [Law 21], sufficient to trigger the statute." Basic Controlex Corp., Inc. v. Klockner Moeller Corp., 202 F.3d 450, 453 (1st Cir. 2000) (alterations in original and footnote omitted). This is so because, as González herself intimates, the Agreement ran afoul of the verbal agreement that she had with Bob Hurley, for it explicitly abridged her previous exclusivity contained therein. See Docket # 102, p. 12 n. 1 ([T]he legality under Law 21 of requiring plaintiff in 2007 to sign a contract that termed her "non-exclusive", and the validity under Law 21 of the contract's provision allowing for the abridgment of

exclusivity through 30 day written notice, are clearly suspect. . . .") (citations omitted); cf. P.R. Laws Ann. tit. 10, § 278a–1(b)(2) (providing that principal has impaired existing relationship when it "establishes a distribution relationship . . . in conflict with the contract existing between the parties") (emphasis added); P.R. Laws Ann. tit. 10, § 279(b)(1) (codifying presumption that principal has impaired existing relationship when it "establishes facilities in Puerto Rico for the direct representation of merchandise or the rendering of services which the sales representatives has previously been in charge of").

An agreement explicitly abridging such exclusivity, then, would have given any reasonable person "notice of the detrimental act." Medina & Medina, Inc. v. Hormel Foods Corp., No. 09-1098, 2012 WL 1121435, at *6 (D.P.R. Mar. 30, 2012). It follows that the statutory clock for González to allege a claim based on any exclusive relationship she may have had with Hurley prior to signing the Agreement was triggered on September 16, 2007. So, González had until September 16, 2010 to file suit. But because she filed the instant complaint on September 23, 2010, such claims are time barred.

Consequently, González's claims stemming from the period prior to August 1, 2007 are hereby **DISMISSED with prejudice**. Partial Judgment will be entered accordingly.

   C.   *The Sales Representative Relationship After July 31, 2009*

Once the Agreement expired on July 31, 2009 — but before Hurley terminated González — there was a six-month gap of time in which the parties' relationship "continued being the same way." Hurley posits that a modifying novation took place, and hence González remained

as a non-exclusive sales representative. The Company does not fare as well on this point, however. The short of it is that Hurley's novation contention is inconsistent with the Agreement, which provided that on its expiration date of July 31, 2008, "it shall expire automatically without the necessity of any notice whatsoever unless terminated earlier as provided herein, and that all "amendments to this Agreement <u>shall be in writing</u> signed by duly authorized representatives of each of the parties hereto." (Emphasis added.); <u>González</u>, 763 F.Supp.2d at 293 ("Under the Agreement, any amendment to this term or any other provision would be in writing signed by the parties."). The parties signed such a written amendment to extend the Agreement until July 31, 2009, but never thereafter. The Agreement thus expired on its own terms on July 31, 2009. Consequently, no novation could have taken place, because the Agreement itself precluded any extensions that were not in writing.

In any event, whether a modifying novation took place or not requires delving into the parties' <u>conflicting</u> intentions, <u>see</u> <u>P.D.C.M. Assoc. v. Najul Bez</u>, 174 P.R. Dec 716, 726 (2008) (certified translation provided by the parties at Docket #99-1), an exercise that, under these circumstances, Court refuses to engage in at the summary judgment stage. Accordingly, because barring an agreement in writing the Agreement itself precluded its extension, and because the Court declines to consider the parties' intentions, Hurley has failed to shoulder its burden of proof in its novation defense. <u>See</u> <u>Union Mut. Life Ins. Co. v. Chrysler Corp.</u>, 793 F.2d 1, 13 (1st Cir.1986).

D.      *Other issues regarding exclusivity*

The Court is also unpersuaded by Hurley's argument that because it sold to national house accounts, and because it licensed manufacturers to use its brand on products manufactured by those licensees, González was non-exclusive.  As fully discussed below, Cruz-Marcano, read in vacuum, could support the general proposition that Hurley selling its products in the Territory precluded Gonzalez's exclusivity a fortiori. See Nor-Dec, Inc. v. Viracon, Inc., 781 F. Supp. 2d 38, 47 (D.P.R. 2010) (Under . . . [Cruz-Marcano], this type of direct competition precludes a finding that Plaintiff was, in fact, an exclusive sales representative."); but see Stewart v. Husqvarna Const. Products North America, Inc., No. 11-1182, 2012 WL 1590284, at * 6 (D.P.R. May 4, 2012) (noting that, under Law 21, "not all instances of direct sales by a principal are considered to defeat exclusivity").

But, as correctly noted by González, a sales representative need not be assigned the entire territory of Puerto Rico, or all markets for the products in Puerto Rico. It is sufficient that the representative be assigned a "specific" territory or market "within" Puerto Rico. See P.R. Laws Ann. tit. 10, § 279(a); see Cruz-Marcano, 172 P.R. Dec. at 553 (noting that courts must ascertain an agent's "definitive market or territory . . . in order to determine the scope of his operation"). And the "markets" referenced by Hurley were not part of González's Territory, see note 1 above; Docket # 91-3, p. 1. Accordingly, Hurley selling to national house accounts and licensing manufacturers to use its brand on products manufactured by those licensees do not constitute the

sort of "direct" competition within Gonzalez's defined market and territory that would preclude a finding of exclusivity.

The Court adds a coda. The evidence of record shows that, during the entire period of the parties' relationship, the Company neither gave González notice of her termination by appointing another sales representative nor sold directly to her accounts. ASUF ¶ 26 Crucially, González was required by Hurley to <u>exclusively</u> represent its products in the Territory, to the exclusion of other competing brands. Id. ¶ 40. It bears to emphasize that the Cruz Marcano court defined one element of Law 21 as requiring evidence that the agent has "promot[ed] and negotiate[d] contracts on an exclusive basis on behalf of a principal on a continuous and stable basis . . . ." 172 P.R. Dec. at 548. And a factor that militated in a finding of exclusivity was that the supplier in Cruz-Marcano, like the Company here,  did not hire "additional personnel . . . to negotiate sales of the lines that Mr. Cruz Marcano [González in the case at hand] was in charge of." Id. at 553.

Whether an agent is the sole sales representative within a defined territory, and whether her sole business is to represent the principal's products or services (like González), then, should be of some consequence to the exclusivity determination. At the outset, this interpretation (the "Traditional Interpretation") comports with the ordinary meaning (or at the very least one meaning) of the word exclusive. See, e.g., City of Vicksburg v. Vicksburg Waterworks Co., 202 U.S. 457, 471 (1906) (finding that exclusive means '[a]ppertaining to the subject alone; not including, admitting, or pertaining to any other or others; undivided; sole: as, an exclusive right

or privilege . . ." (citation and internal quotation marks omitted; emphasis added);Webster's

Ninth New Collegiate Dictionary 433 (1986) (defining exclusive as "limiting or limited to

possession, control, or use by a single individual or group" or as "single, sole"). The Traditional

Interpretation is also in accord with the Civil Code's provision that "[t]he words of a law shall

generally be understood in their most <u>usual signification</u>, taking into consideration, not so much

the exact grammatical rules governing the same, as their <u>general and popular use</u>," P.R. Laws

Ann. tit. 31, § 15 (emphasis added) and is in line with the protectionist legislative objective, <u>see</u>

note 3 above, and Law 21's liberal interpretation, <u>see, e.g.</u>, <u>Rafael Rodríguez Barril, Inc.</u>, 619

F.3d at 93-94. After all, "the Supreme Court of the Commonwealth has emphasized that this

statutory language must be 'delimited in the light of the ends sought by the statute.'" <u>Sudouest

Imp. Sales Corp. v. Union Carbide Corp.</u>, 732 F.2d 14, 16 (1st Cir. 1984) (Breyer, J.) (citation

omitted).

It is true that the Puerto Rico Supreme Court in <u>Cruz-Marcano</u> alluded to the mercantile

law definition of exclusivity, where the principal is not allowed to sell the product in the same

territory or market in which the sales representative operates. <u>See</u> <u>Cruz-Marcano</u>, 172 P.R. Dec.

at 548 (relying on Spanish mercantile law construing exclusive agency and the Spanish Royal

Academy Dictionary to say that "in a sales representatives agreement protected by . . . [Law 21],

the principal cannot on his own or through a third party perform the same jobs as he has

conferred on the agent . . .").[4] But it is equally true that nothing in <u>Cruz-Marcano</u> suggests that

---

[4] The Supreme Court of Puerto Rico cited a Spanish commentator to support the proposition that an exclusive agency is one whereby the principal grants an exclusive territory to an agent, thereby

the court sought to cabin the definition of exclusivity to the mercantile law interpretation. Cf.

Stewart, 2012 WL 1590284, at * 6 (noting that, under Law 21, "not all instances of direct sales

by a principal are considered to defeat exclusivity"). Adopting such a narrow reading, after all,

would have run afoul of the court's own admonition that because Law 21 contains "schematic

definitions," courts cannot "determine clearly who should qualify as a sales representative and

what the implications of the exclusivity requirements are." Cruz-Marcano, 172 P.R. Dec. at 545;

cf. Jorge Rivera Surillo & Co., Inc. v. Cerro Copper Products Co., 885 F. Supp. 358, 362 n. 4

(D.P.R. 1995) ("The enumeration of criteria, to determine dealership made by the Supreme Court

of Puerto Rico is numerus apertus and not numerus clausus."). [5] Cruz-Marcano seems to have

---

restricting the principal's rights to make sales therein. See Cruz-Marcano, 172 P.R. Dec. at 539. ("[A]n
exclusive agency is characterized by the fact that the agent may keep the represented businessman from
conducting operations in the zone reserved to the former, whether this involved operations conducted
personally by the businessman, or operations carried out through his assistants or other agents." (citing
J. Garrigues, Tratado de Derecho Mercantil 567 (1963))). But courts have long made a distinction
"between an exclusive agency to sell, which merely prohibits the appointment of another agency to sell,
and an exclusive right to sell." Albright v. Kalbitzer, 62 F. Supp. 815, 821 (E.D. Pa. 1945). An
exclusive agency that does not give an exclusive right to sell merely prohibits appointment of another
agent to sell, see id.; see also, e.g., Ballard v. Tingue Mills, Inc., 128 F. Supp. 683, 689 (D. Conn. 1954),
and hence does not impede the principal from competing with the agent within the specified territory.
Stahlman v. National Lead Co., 318 F.2d 388, 393 n. 6 (5th Cir. 1963) (collecting cases on this point);
Black's Law Dictionary 190 (9th ed. 2009) (defining exclusive agency as "merely exclud[ing] all other
brokers, but not the owner, from selling the products or property") (emphasis added). Whether such a
sensible dichotomy is forthcoming under the civil law, however, is beyond the scope of this opinion.

    [5] The Spanish mercantile law definition, it appears, would leave unprotected those sales
representatives that, by the nature of their work, coexist with the principal within the same territory.
Take, for example, a sole sales representative who works for pharmaceutical companies within a
defined territory. These sales representatives are "call[ed] upon physicians and to persuade them to
prescribe the pharmaceutical products of the representative's employer." Schaefer-LaRose v. Eli Lilly
& Co., 679 F.3d 560, 562 (7th Cir. 2012) (emphasis added); accord Cruz-Marcano, 172 P.R. Dec. at
544 ([A] sales representative is responsible for persuading the customer to conclude a contract.")
(emphasis added). The pharmaceutical companies, however, operate in the same territory as these sales
representative, because they sell "their products to wholesalers, retailers and other facilities such as

left unanswered the question whether exclusivity is simply a limitation on the principal's right to compete (the mercantile law definition), or whether it can also encompass the Traditional Interpretation: a non-compete obligation by a <u>sole</u> sales representatives whose business is <u>solely</u> to represent the principal's products. Sales representatives like González would greatly benefit from this latter interpretation, which may further the objective behind Law 21 of placing the sales representatives on equal footing with the distributors currently protected by Law 75.

In short, that the <u>Cruz-Marcano</u> court cited to one definition of "exclusivity" does not necessarily foreclose a different, yet compatible interpretation. Be that as it may, it is no easy task to predict whether the Puerto Rico Supreme Court would sanction the Traditional Interpretation. But the Court need not make a so-called <u>Erie</u> prediction regarding this arresting issue. <u>See</u> <u>Candelario del Moral v. UBS Fin. Servs.</u>, 699 F.3d 93, 98, (1st Cir. 2012). González, who failed to file a reply brief, has completely ignored this important argument, neglecting to even discuss <u>Cruz-Marcano</u> in her opposition. And it goes without saying a court should not be left to "do counsel's work, create the ossature for the argument, and put flesh on its bones." <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990). Luckily for González, Hurley failed to meet its burden on its novation defense, so it is now up to the jury to decide whether the parties' modus operandi during this time frame evinced "exclusivity."

---

hospitals . . . ." <u>Schaefer-LaRose</u>, 679 F.3d at 562. Ironically, Law 21 was enacted precisely to protect, among other business intermediaries, pharmaceutical representatives. <u>Cf.</u> <u>Cruz-Marcano</u>, 172 P.R. Dec. at 544 (citing legislative history stating that Law 21 was aimed at protecting "factory representatives").

*Just Cause under Law 21*

Hurley's fallback argument is that, even if González's relationship with it fell under the purview of Law 21, the Company nonetheless had "just cause" to terminate her. The Court, however, need not tarry long here, as it agrees with González that Hurley has failed to meet its "burden of persuasion on the factual elements of the 'just cause' showing." R.W. Int'l Corp. v. Welch Foods, 88 F.3d 49, 52 (1st Cir.1996) (citations omitted).

Just like 75, Law 21 provides that "just cause," which depends on the facts of each case, see id. (citation omitted), is "noncompliance of any of the essential obligations of the sales representation contract by the sales representative, or any act or omission on his/her part that may adversely and substantially affect the interests of the principal or grantor in the development of the market or the sale of merchandise or services." P.R. Laws Ann. tit. 10, § 279(d). "Only when the . . . [sales representative] fails to comply with any of the essential conditions or adversely affects in a substantial manner the interest of the principal,  may the latter terminate the contract without payment for damages." Warner Lambert Co. v. Tribunal Superior, 1 P.R. Offic. Trans. 527, 101 P.R. Dec. 378, 400 (1973). As relevant here, Law 21 provides that it shall not be deemed as "just cause":

> [T]he violation or noncompliance of any provision included in the sales representation contract by a sales representative, which fixes codes of behavior, sales quotas or goals, marketing or promotion that do not conform to the realities of the Puerto Rican market at the time of the violation or noncompliance by the sales representative. P.R. Laws Ann. tit. 10, § 279b(a)

Without entering into the alleged instances that, according to Hurley, provide it with "just cause", the record is replete with contested issues of material fact. On the one hand, there are some client complaints — most of them mild ones — regarding González's performance as well as evidence that her sales had dwindled towards the end; on the other, González's termination coincided with what appears to be Hurley's plan to substantially reduce its independent sales representative staff in 2009. See Docket # 103-12, p. 1 & 103-11. Viewed in the light most favorable to Gonzalez, a jury could infer that the reasons proffered by Hurley to terminate González were a pretext to reduce its independent sales representative staff.

The Company references various "sales goals" and other comparative sales performance statistics to establish Gonzalez's decreasing performance. See e.g., SUF ¶¶ 77-83. But it did not come forward with evidence showing that the Company's sales expectations "conform[ed] to the realities of the Puerto Rican market at the time of the violation or noncompliance by the sales representative. P.R. Laws Ann. tit. 10, § 279b(a); Orba, Inc., 49 F. Supp. 2d at 72 (finding that the principal failed "to present to the Court any evidence that would counter . . . [the sales representatives'] assertions that they performed as well as could be expected under the [market] conditions");see also id. ("The burden of the proof to evidence the fairness of the code of behavior of the fixed quota or goal shall rest on the principal or grantor."). Hurley has failed to meet its burden on proof on this front.

In any event, Heelan calling González "pathetic," Docket # 103-16, p. 6, coupled with other instances that, drawing all inferences in González's favor, could resemble a vendetta

against her, support conflicting inferences. "Summary judgment cannot be predicated on so vacillatory a record." <u>Montfort-Rodriguez v. Rey-Hernandez</u>, 504 F.3d 221, 229 (1st Cir. 2007) (citation and internal quotation marks omitted).

Consequently, whether Heelan and the Company fabricated a pretext to terminate González and whether Hurley had "just cause" to terminate her implicate the "weighing of the evidence," and a trial is the proper arena to gauge a witnesses' credibility. The evidence here, "though thin, point[s] in different directions; that is, it tend[s] to support conflicting inferences. . . ." <u>Mandel v. Boston Phoenix, Inc.</u>, 456 F.3d 198, 207 (1st Cir. 2006). Drawing all reasonable inferences in González's favor, Hurley has failed to shoulder its burden at the summary judgment stage on this point. <u>See</u> <u>Montfort-Rodriguez</u>, 504 F.3d at 228.

**Conclusion**

For the reasons stated, Hurley's motion for summary judgment is **GRANTED in part and DENIED in part**. Without intimating any view on the ultimate outcome, the Court strongly "suggest[s] that this is a case best resolved by settlement." <u>Bos. Edison Co. v. Fed. Energy Regulatory Commn</u>, 233 F.3d 60, 69 (1st Cir. 2000).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of January, 2013.

> *s/Salvador E. Casellas*
> SALVADOR E. CASELLAS
> U.S. Senior District Judge